Filed 7/31/13  P. v. Rocker CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062458 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD238208) |
| v. | |
| MICHAEL ROCKER, | |
| Defendant; | |
| LEO HAMEL FINE JEWELERS, INC., | |
| Claimant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Reversed and remanded with directions.

The Law Offices of Jon Webster, Jon Webster, James A. Arcellana and Raymond M. Yetka for Claimant and Appellant.

Thomas E. Montgomery, County Counsel, and Morris G. Hill, Deputy County Counsel, for Plaintiff and Respondent.

The appeal in this criminal case involves a collateral dispute between a third-party pawnbroker—claimant Leo Hamel Fine Jewelers, Inc. (Leo Hamel)—and the grand theft victim—Costco, a third-party commercial retailer that is not a party to this appeal—over possession of jewelry the police seized from Leo Hamel after defendant Michael Rocker fraudulently purchased the jewelry from Costco with checks that were later dishonored because of lack of sufficient funds and then pledged the jewelry to Leo Hamel as security in exchange for loans in the total amount of $10,000, which he did not repay. Rocker pleaded guilty to one count of grand theft (Pen. Code, § 487, subd. (a); victim: Costco) and one count of second degree burglary (Pen. Code, § 459; victim: Leo Hamel).

In this appeal Leo Hamel challenges the court's orders (made during the July 23, 2012[1] sentencing and probation proceeding) (1) granting to Costco possession of the seized jewelry that was still in police custody at the time of the hearing, and (2) requiring Rocker to pay restitution to Leo Hamel for the loan proceeds Rocker fraudulently obtained.[2]

Leo Hamel asserts two principal claims of error. First, it asserts the court infringed upon its procedural due process rights to notice and a meaningful opportunity to be heard by "fail[ing] to enforce statutory requirements for disposition of property seized

---

[1]     All further date references will be to calendar year 2012.

[2]     As the People acknowledge, Leo Hamel has standing to appeal—as a nonparty pawnbroker—under this court's decision in *People v. Hernandez* (2009) 172 Cal.App.4th 715 (*Hernandez*).

from a pawnbroker" as set forth in Financial Code section 21206.8[3] and Penal Code sections 1408 through 1410 (discussed, *post*).

Second, Leo Hamel claims the court erroneously "failed to recognize that [Leo Hamel's] rights to the return of the [seized jewelry] were governed not by criminal statutes, but . . . by application of section 2403 of the [California Uniform] Commercial Code";[4] and, thus, the court abused its discretion by "disregarding" Leo Hamel's rights under that section as a good faith purchaser for value.

We conclude the procedures used by the court in awarding possession of the jewelry to Costco infringed upon both Leo Hamel's right to enforcement of applicable statutory requirements and its procedural due process rights to reasonable notice and a meaningful opportunity to be heard. Accordingly, we reverse the orders and remand the matter with directions.

---

[3]     Financial Code section 21206.8 provides in part: "(a) Notwithstanding the provisions of Chapter 12 (commencing with Section 1407) of Title 10 of Part 2 of the Penal Code, whenever property alleged to have been stolen . . . is taken from a pawnbroker, the peace officer, magistrate, court, clerk, or other person having custody of the property shall not deliver the property to any person claiming ownership unless the provisions of this section are complied with. [¶] (b)(1) If any person makes a claim of ownership, the person having custody of the property shall notify the pawnbroker. [¶] (2) If the pawnbroker makes no claim with respect to the property within 10 days of such notification, the property may be disposed of as otherwise provided by law."

[4]     California Uniform Commercial Code section 2403, subdivision (1) provides in part: "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with *voidable* title has power to transfer a good title to a *good faith purchaser for value*. When goods have been delivered under a *transaction of purchase* the purchaser has such power even though [¶] . . . [¶] (b) The delivery was in exchange for a check which is later dishonored, or [¶] . . . [¶] (d) The delivery was procured through fraud punishable as larcenous under the criminal law." (Italics added.)

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

Rocker fraudulently purchased three items of jewelry—worth about $29,000, according to the prosecutor—from Costco by writing checks that were later dishonored, knowing he had insufficient funds to cover the cost of the purchases. After making the purchases, Rocker fraudulently obtained from Leo Hamel, a licensed pawnbroker, two loans in the total amount of $10,000, pledging the jewelry as security for repayment of the loans. Under the terms of the pawn contract between Leo Hamel and Rocker, Leo Hamel agreed to hold the pledged jewelry but would acquire ownership of the jewelry in four months 10 days if Rocker did not repay the $10,000 in loan proceeds he obtained from Leo Hamel plus interest within that time period. Rocker did not repay the loan, and Leo Hamel foreclosed on its security interest.

B. *Procedural Background*

1. *Rocker's guilty pleas*

Rocker was charged in a felony complaint with the commission of various crimes related to these events, and the San Diego Police Department seized the jewelry from Leo Hamel's place of business pending the outcome of the criminal prosecution in this case.[5] Rocker pleaded guilty to one count of grand theft for his fraudulent purchase of the jewelry from Costco, and one count of second degree burglary for entering Leo Hamel with the intention of fraudulently pledging the jewelry to obtain the $10,000. The change

---

[5]     Leo Hamel does not challenge the San Diego Police Department's seizure of the jewelry.

of plea form initialed by Rocker indicated that the factual basis for his guilty pleas was his admission that he "unlawfully stole personal property from Costco in excess of $950.00 value and [he] entered a commercial building with the intent to commit a theft."

2. *July 11 hearing*

Leo Hamel's counsel from Northern California appeared at a hearing held on July 11, the date originally set for the sentencing and probation hearing in this case. Rocker, his counsel, and the prosecutor also appeared at the hearing. The record does not show an appearance on behalf of Costco.

Citing *G & G Jewelry, Inc. v. Oakland* (9th Cir. 1993) 989 F.2d 1093 (*G & G Jewelry*) and denying that Leo Hamel was a victim, Leo Hamel's counsel requested that the court issue an order requiring the police to return the jewelry to Leo Hamel.

The court informed Leo Hamel's counsel that it had had a discussion with the parties in chambers regarding "how to proceed on the restitution issue" and that the parties and the court had agreed it was "appropriate to set it for a contested restitution hearing." The court then told Leo Hamel's counsel:

> "[A]t *that time*, that argument can be presented to the court, because, apparently there is still some disagreement between the [prosecutor] and defense [counsel] as to where the property should go." (Italics added.)

The court then indicated it would schedule the "restitution hearing" for a date "about 60 days" after the current hearing:

> "So we are going to calendar a hearing, although, unfortunately, it appears that first we will have to have the actual sentencing hearing, and then the restitution hearing will be held. So that could be in about 60 days."

5

Leo Hamel's counsel asked the court, "Is that something that can be set now or does that depend on a probation report?"  Indicating it would not be scheduling the restitution hearing at the current hearing, the court stated:

> "If we were going forward with the sentencing today, I would be setting that hearing.  But, first, we have to complete [Rocker's] sentencing, *and then schedule the restitution*."  (Italics added.)

Responding that he "[did not] have the benefit of . . . any of the police reports" and he was not a resident of San Diego County, Leo Hamel's counsel asked, "[I]s there a possibility that I can just get the [prosecutor] to provide me notice of whenever the court sets that restitution hearing?"

The prosecutor responded by agreeing to provide such notice, stating, "Sure.  I will do so as a courtesy to counsel."

In response, the court stated:

> "All right then.  [¶] And we will have a hearing date and announce that date shortly, sir.  So you also will be able to contact my court directly after [Rocker's] sentencing date, and we can get you the date so you will have two ways to do that.  [The prosecutor] has offered to contact you, but he can also contact my court after the sentencing date to retain the restitution hearing date."

Leo Hamel's counsel replied, "Great.  Thank you, Your Honor."  The reporter's transcript of the July 11 hearing shows this was the last statement Leo Hamel's counsel made during the July 11 hearing.

Rocker's counsel then asked the court for additional time to prepare for sentencing because he been out of town and had received the probation report only two days earlier.

6

The prosecutor objected to a continuance, stating, "Your Honor, we believe we should go forward at this time with sentencing."

Following further discussion, including a discussion of Rocker's ability to continue working and his desire (according to his counsel) to make a "more substantial" restitution payment, the court continued the sentencing and probation hearing to July 23. The record does not affirmatively show that Leo Hamel's counsel was still present when the court set the date and time of the July 23 hearing.

3. *Prosecutor's July 19 notice to Leo Hamel's counsel regarding the July 23 hearing*

On July 19, four days before the July 23 hearing set by the court on July 11, the prosecutor contacted Leo Hamel's counsel by telephone and notified him of the date and time of the hearing.

4. *July 23 hearing*

Leo Hamel, Costco, Rocker, and the People were all represented at the July 23 sentencing and probation hearing. The court began the hearing by stating:

> "First, with the sentencing. After I have sentenced the defendant, we will address the issue of the property and the restitution."

Defense counsel asked the court to grant Rocker probation and informed the court that he had $7,500 in his trust account that Rocker wanted to immediately pay towards restitution. Defense counsel then stated:

> "[I]t's Mr. Rocker's position that [the jewelry] in custody of the police be returned to Costco, the original owners of these items, to make them whole. [¶] That would leave the other victim in the case, Leo Hamel, with the $10,000 loan, which was two $5,000 loans on the pawned property, and at least get most of that paid back, 75

7

percent paid back.  I'm sure interest has accrued.  I don't know the amounts.  [¶] But Mr. Rocker would be amenable to work really fast to get those moneys paid back as well so that we can pay it back."

The court asked, "Is all of the jewelry that was purchased at Costco able to be returned?"  Defense counsel replied that it was, adding, "None of it was lost or damaged or sold.  I believe all of the packaging is [intact].  [¶] There are documents for authenticity and identifying the items.  They went right from Costco to the pawnshop, and, shortly after that, to police custody."  The court responded, "We will address that further when it comes time to hear from the interested parties and the victim."

The prosecutor asked the court to impose 90 days of custody, adding, "I understand that Mr. Rocker . . . will be paying some of the restitution, but we have given him substantial time to come up with the entirety of the restitution."

The court then decided to address the issue of the "return of the property," stating:

> ""[B]efore I do the sentencing, I think we should probably address the return of the property because that's going to impact the restitution order."

Rocker's counsel stated he could not "think of any reason, legally, why Costco would be denied any claim"; and added, "The reality is that we have a representative from Costco here that has made representations that they have never given up a claim of ownership to the [jewelry].  As of today, they are still claiming ownership.  They want [it] back."  Following further argument, defense counsel told the court, "I think that Costco is the owner and continues to be the owner.  I would ask the court to return the items to Costco."

8

The prosecutor argued that, "for reasons of fairness," the jewelry "should be returned to Costco, given the fact that we know who the items were originally stolen from. This in no way prevents Leo Hamel from receiving restitution. [¶] I would recommend that the $7,500 . . . go to Leo Hamel immediately, and also for any interest to be paid as part of the restitution order."

Costco's representative, a regional loss prevention manager, argued that Costco still owned the jewelry, stating: "Costco's position is that the merchandise that was impounded belongs to Costco. At the time [Rocker] purchased it, he wrote us checks that were not valid, so we maintain ownership of it."

Leo Hamel's counsel renewed his request that the jewelry be returned to Leo Hamel. Claiming the jewelry was not stolen property and Leo Hamel was a good faith purchaser for value that had acquired title to the jewelry from Rocker under California Uniform Commercial Code section 2403 (see fn. 4, *ante*), Leo Hamel's counsel objected that (1) the court lacked jurisdiction under the Penal Code regarding the property issue, (2) Leo Hamel had not been given notice mandated by Financial Code section 21206.8, and (3) it had been deprived of its due process rights to notice and an opportunity to be heard. Leo Hamel's counsel stated, "I have . . . never received a copy of the police report; and . . . never received a copy of the complaint. [¶] All I know about this case is that bad checks were passed by Mr. Rocker to Costco to acquire the property that he subsequently pawned at my client's place of business."

9

a. *Rulings*

The court ruled it had jurisdiction under Penal Code sections 1407 through 1413 regarding the return of the jewelry in this criminal proceeding. Finding that Rocker "stole" the jewelry from Costco by fraudulently writing checks with insufficient funds, the court determined it had authority under the Penal Code to return the jewelry to the party it "deem[ed] basically fit," and then ordered that the jewelry be returned to Costco.

The court then granted Rocker three years' formal probation, imposed a jail term of 180 days in local custody, and ordered him to pay restitution to Leo Hamel in the amount of $10,000. Rocker's counsel informed the court that he had in his trust account $7,500 that Rocker had given to him for immediate payment of restitution, and the court ordered that the $7,500 be paid directly to Revenue and Recovery by July 26, and that Rocker pay the balance at the monthly rate of $200.

DISCUSSION

I. *STATUTORY SCHEMES*

A. *Pawnbroking*

"Under California law, a person pawning property pledges it, transferring temporary possession of the property and a security interest in it to the pawnbroker." (*Hernandez, supra*, 172 Cal.App.4th at p. 722; see Fin. Code, § 21000 [a pawnbroker receives goods "in pledge as security for a loan"].) "If the pledgor fails to redeem the 'pledged property' by repaying the loan and any applicable charges within the specified loan period, title to the property passes to the pawnbroker and the property becomes 'vested property.'" (*Hernandez*, at p. 722, citing Fin. Code, §§ 21002, 21201.)

10

Pawnbrokers have "a possessory interest in the pawned property entitling them to due process protection." (*Hernandez, supra*, 172 Cal.App.4th at p. 722; see also *G & G Jewelry, supra*, 989 F.2d at p. 1098 ["[P]awnbroker, as pledgee, has a legitimate possessory interest in the property as against the rest of the world except the person having title to the property."].)

B. *Recovery and Return of Allegedly Stolen Property in the Possession of a Pawnbroker*

As this court explained in *Hernandez, supra*, 172 Cal.App.4th at page 720, "[t]he California Legislature has provided law enforcement with two avenues for facilitating the recovery of stolen property in the possession of a pawnbroker." Under the avenue pertinent here, Financial Code section 21206.7[6] "allow[s] law enforcement to seize *allegedly stolen property* from a pawnbroker and give the pawnbroker a receipt for the property."[7] (*Hernandez*, at p. 720, italics added.)

_____

6      Financial Code section 21206.7 provides: "Whenever any property is taken from a pawnbroker by a peace officer which is *alleged to be stolen property*, the police officer shall give the pawnbroker a receipt for the property which shall contain a description of the property, the reason for seizure, and the names of the pawnbroker and the officer." (Italics added.)

7      "Alternatively, law enforcement can place a 90-day hold on property in possession of a pawnbroker upon probable cause to believe that the property was stolen. ([Bus. & Prof. Code,] § 21647, subd. (a).) During the hold period, the pawnbroker cannot release or dispose of the property unless authorized by a court order or a written authorization signed by a member of the law enforcement agency that placed the hold on the property (*ibid*.) and, upon reasonable notice, the pawnbroker must make the property available to a member of the law enforcement agency that placed the hold on the property (*id*., subd. (b)). (*Hernandez, supra*, 172 Cal.App.4th at p. 721.)

We also explained in *Hernandez*: "[I]f any person makes a claim of ownership, the custodian of the seized property must *notify the pawnbroker of the competing claim* (Fin. Code, § 21206.8, subd. (b)(1)[, (see fn. 3, *ante*)]), and the pawnbroker then has 10 days to assert a claim to the property (*id.,* subd. (b)(2)). Before law enforcement can dispose of the property, it must comply with certain notice provisions to the pawnbroker and the purported owner of the property and a court will decide the final disposition of the property after also giving notice to any additional person as may be required by the court. (*Id*., subd. (c); Pen.Code, § 1407 et seq.)"[8] (*Hernandez, supra*, 172 Cal.App.4th at pp. 720-721, italics added; see also *Ensoniq Corp. v. Superior Court* (1998) 65 Cal.App.4th 1537, 1547 (*Ensoniq*) ["When property is alleged to have been stolen . . . , the officer with custody of the property must hold it subject to the provisions of [Penal Code] section 1407 et seq."].)

In a criminal prosecution in which the defendant is accused of stealing the seized property, Penal Code section 1408 "provides that a person who claims to be the owner of the allegedly stolen . . . property may *apply* to the magistrate for an order delivering the property to him, upon satisfactory proof of ownership" (*Ensoniq, supra,* 65 Cal.App.4th at p. 1547, italics added) and "requires that *reasonable notice and an opportunity to be*

---

[8]    Penal Code section 1407 provides: "When property, *alleged to have been stolen* . . . comes into the custody of a peace officer, he shall hold it subject to the provisions of this chapter relating to the disposal thereof." (Italics added.)

12

*heard* be given to the person from whom the property was seized."[9] (*Id.* at pp. 1547-1548, italics added.)

Similarly, Penal Code section 1410, which applies to the disposition of stolen property following a trial in a criminal prosecution in which the defendant was accused of stealing the seized property, provides that, "[i]f the property stolen . . . has not been delivered to the owner, the court before which a trial is had for stealing . . . ,*upon the application of the owner to the court* and on proof of his title, *after reasonable notice and opportunity to be heard* has been given to the person from whom custody of the property was taken and any other person as required by the court, may order it to be restored to the owner without prejudice to the state." (Italics added.)

## II. *ANALYSIS*

Leo Hamel argues the court, in ordering that the jewelry seized by the police from Leo Hamel be returned to Costco, infringed upon its procedural due process rights to notice and a meaningful opportunity to be heard by "fail[ing] to enforce statutory requirements for disposition of property seized from a pawnbroker" as set forth in Financial Code section 21206.8 and Penal Code sections 1408 through 1410. We agree.

---

9    Penal Code section 1408 provides: "*On the application of the owner and on satisfactory proof of his ownership of the property*, after reasonable notice and opportunity to be heard has been given to the person from whom custody of the property was taken and any other person as required by the magistrate, the magistrate before whom the complaint is laid, or who examines the charge against the person *accused of stealing* . . . it, shall order it to be delivered, without prejudice to the state, to the owner, on his paying the necessary expenses incurred in its preservation, to be certified by the magistrate. The order entitles the owner to demand and receive the property." (Italics added.)

13

In *Hernandez,* this court explained that "[t]he federal and state Constitutions generally require that individuals be accorded procedural due process before being deprived of a protected property interest. [Citations.] This requirement ensures fair play, protects an individual's use and possession of property from arbitrary encroachment and minimizes unfair or mistaken deprivations of property. [Citation.] Whenever property is taken, due process requires some form of notice and a hearing [citation]." (*Hernandez, supra,* 172 Cal.App.4th at p. 721.)

Here, Leo Hamel, as a licensed pawnbroker, had a constitutionally and statutorily protected possessory interest in the pawned jewelry the police seized from its place of business. It thus was entitled to enforcement of statutory requirements for disposition of the seized jewelry, as well as reasonable notice and a meaningful opportunity to be heard, before the court ordered that Costco was entitled to possession of that property. (*Hernandez, supra,* 172 Cal.App.4th at p. 722; Fin. Code, § 21206.8, subds. (a) & (b)(1); Pen. Code, § 1407 et seq.) For reasons we now explain, we conclude the procedures used by the court in awarding possession of the jewelry to Costco infringed upon both Leo Hamel's right to enforcement of applicable statutory requirements and its procedural due process rights to reasonable notice and a meaningful opportunity to be heard.

"Financial Code [section] 21206.8 governs the disposal of stolen property seized from pawnbrokers, rather than placed on hold under Business & Professions Code [section] 21647." (*Sanders v. City of San Diego* (9th Cir. 1996) 93 F.3d 1423, 1430 (*Sanders*).) As already noted, subdivision (b)(1) of Financial Code section 21206.8 provides that, "[i]f any person makes a claim of ownership, the person having custody of

14

the property shall notify the pawnbroker." Thus, "under Financial Code [section] 21206.8, where an owner makes a claim regarding property seized from a pawnbroker, the property cannot be disposed of (as provided for in Penal Code §§ 1407 et seq.) until notice is sent to the pawnbroker that a claim has been made." (*Sanders*, at p. 1430, citing Fin. Code, § 21206.8, subd. (b)(1).)

Here, Rocker was convicted of grand theft for fraudulently purchasing the jewelry from Costco, and his conviction was based on his admission that he "unlawfully stole personal property from Costco" when he entered a Costco store with the intent to commit a theft. It is undisputed that both Leo Hamel and Costco claim ownership of the seized jewelry, although it is not clear from the record when or in what manner they made those claims in this case. It is also undisputed the jewelry Rocker admittedly stole from Costco was seized by the San Diego Police Department and was still in its custody at the time of the July 23 hearing. At that hearing, Leo Hamel's counsel argued that Leo Hamel had "been deprived of due process" and objected that Leo Hamel had not been given notice of Costco's claim of ownership of the jewelry as mandated by Financial Code section 21206.8. Leo Hamel's counsel also objected that he had not received a copy of the police report or the felony complaint filed against Rocker, suggesting he had received nothing that would provide Leo Hamel with notice regarding the basis of Costco's claim of ownership.

The record is devoid of any showing that the San Diego Police Department—as the custodian of the seized jewelry—provided to Leo Hamel the requisite notice of Costco's competing claim of ownership mandated by Financial Code section 21206.8, subdivision

15

(b)(1). Accordingly, we conclude the court erred by failing to enforce this statutory requirement.

We also conclude the court erred by ordering that the jewelry be returned to Costco in the absence of a statutorily required application by Costco asserting, and supporting with proof, its claim of ownership of that property. "Penal Code [section] 1407 et seq. provide[s] various methods for disposing of stolen . . . property." (*Sanders*, *supra*, 93 F.3d at p. 1430, citing Pen. Code, §§ 1407-1413.) For example, Penal Code section 1408, as pertinent here, conditionally authorizes a trial court, in a criminal case involving theft of property that has been seized, to order that it "be delivered . . . to the owner," but only "[o]n the application of the owner" and on "satisfactory proof of his ownership of the property, after reasonable notice and opportunity to be heard has been given to the person from whom custody of the property was taken." (Pen. Code, § 1408, see fn. 9, *ante*.)

Here, the court indicated during the July 23 hearing that its jurisdiction to order the return of the seized jewelry in this criminal proceeding was based on Penal Code section 1407 et seq. However, the record is devoid of any showing that Costco submitted and served on Leo Hamel a written application asserting, and supporting with proof, a claim that it was the owner of the seized jewelry Rocker was convicted of stealing from Costco in this matter. Absent such an application, the court was not authorized to order the jewelry returned to Costco. (See Pen. Code, § 1408.)

With respect to Leo Hamel's claim the court infringed upon its procedural due process right to reasonable notice of the July 23 hearing, the record shows Leo Hamel's

16

counsel appeared at the initial July 11 presentencing hearing, and, at his request, the prosecutor agreed to provide Leo Hamel with notice of what the court stated would be a "contested restitution hearing" that would be held "about 60 days" later after the "actual sentencing hearing." Later during the July 11 hearing, the court continued the sentencing and probation hearing to July 23. As already noted, the record does not affirmatively show that Leo Hamel's counsel was still present when the court set the date and time of the July 23 hearing.

The record also shows the prosecutor did not provide notice of the July 23 hearing to Leo Hamel's counsel until July 19, four days prior to the hearing, and he provided that notice by means of a telephone call. Although the court had told Leo Hamel's counsel at the July 11 hearing that the "contested restitution hearing" would be scheduled *after* the sentencing and probation hearing was held, the court announced at the beginning of the July 23 sentencing and probation hearing that it would "address the issue of the property and the restitution" later in that hearing after it sentenced Rocker. Leo Hamel's counsel objected this was "insufficient to meet due process requirements." We agree. Four days' notice given over the telephone was insufficient.

Leo Hamel points out that at the July 11 hearing its counsel cited *G & G Jewelry*, *supra*, 989 F.2d 1093, in support of Leo Hamel's request that the court order the police to return the jewelry to it rather than to Costco. The record of that hearing shows Leo Hamel's counsel asserted that *G & G Jewelry* held that, "once the items taken from a pawnbroker have reached their evidentiary value through the conclusion of criminal proceedings, the item[s] ha[ve] to be returned to the pawnbroker." However, *G & G*

17

*Jewelry* is distinguishable. In that case a robber stole camera equipment from the victim, and another person who had acquired the equipment pawned it at a pawnshop. (*Id.* at p. 1094.) The police placed a 90-day hold on the equipment under Business and Professions Code section 21647 (see fn. 7, *ante*). The United States Court of Appeals for the Ninth Circuit in *G & G Jewelry* stated, "As we interpret the statutory provisions [of Business and Professions Code section 21647], when the need for the property for criminal investigative purposes or evidence in a trial has ended (however possession was taken), the property is to be returned to the pawnbroker." (*G & G Jewelry*, at p. 1102; see also *Sanders*, *supra*, 93 F.3d at p. 1432 ["In *G & G Jewelry*, we stated that Business [and] Professions Code [section] 21647 implicitly requires that property taken from a pawnbroker, however it is taken, must be returned to the pawnbroker when the need for the property for criminal investigative purposes or evidence in a trial has ended."].) *G & G Jewelry* is distinguishable because, unlike this case which involves Financial Code section 21206.8 and the seizure from a pawnbroker of property alleged to have been stolen, it involved a 90-day hold under Business and Professions Code section 21647. (See *Sanders*, at p. 1432 ["[A]lthough *G & G Jewelry* relied upon Financial Code [section] 21206.7 in holding that the California legislature intended to leave the police the option of seizing property for evidentiary purposes, *we did not discuss Financial Code [section] 21206.8*, which explicitly governs the disposal of stolen property that has been seized from a pawnbroker (as opposed to having been placed on hold.)," italics added.].) *G & G Jewelry* is also distinguishable because, unlike this case, it did not involve Penal Code section 1407 et seq.

In sum, we conclude the order granting possession of the seized jewelry to Costco and the related restitution order must be reversed, and the matter remanded for further proceedings.[10]

DISPOSITION

The July 23, 2012 orders granting to Costco possession of the subject jewelry and requiring Rocker to pay restitution to Leo Hamel are reversed. In all other respects the judgment is affirmed. The case is remanded to the trial court for further proceedings in

---

[10] In light of our conclusion, we need not reach Leo Hamel's claim the court erroneously "failed to recognize that [Leo Hamel's] rights to the return of the [seized jewelry] were governed . . . by application of section 2403 of the [California Uniform] Commercial Code," and, thus, the court abused its discretion by "disregarding" Leo Hamel's rights under that section as a good faith purchaser for value. Central to this claim are Leo Hamel's assertions that (1) Rocker "obtained voidable title to the goods" under California Uniform Commercial Code section 2403, subdivision 1(b) (see fn. 5, *ante*) because he "purchased the jewelry from Costco by writing insufficient funds checks"; and (2) Rocker's "voidable title passed to [Leo Hamel] as good title" under that section because Leo Hamel was a good faith purchaser for value. The reporter's transcript of the July 23 hearing shows Leo Hamel's counsel argued that the jewelry was not stolen property and Leo Hamel was a good faith purchaser for value that had acquired title to the jewelry from Rocker under California Uniform Commercial Code section 2403. It also shows the court considered this argument, stating, "The more interesting argument is your argument that section 2403 of the California [Uniform] Commercial Code indicates whether, essentially, a merchant who obtains property from someone who may not have clear title nonetheless obtains good title when they receive the property."
Thus, were it necessary for this court to reach the merits of this claim, we would conclude the record does not support Leo Hamel's assertion that the court "disregard[ed]" its rights as a good faith purchaser for value under California Uniform Commercial Code section 2403. We note that Leo Hamel cites no authority for the proposition that it is a "good faith purchaser for value" within the meaning of California Uniform Commercial Code section 2403. We also note that, during the July 23 hearing, its counsel stated, "My client is a licensed California collateral *lender*" (italics added), and informed the court that Leo Hamel had "foreclosed" on its security interest in the jewelry. In sum, Leo Hamel's assertion it is a good faith purchaser for value within the meaning of section 2403 of the California Uniform Commercial Code is not supported by any citation to the law or the record in this matter.

accordance with this opinion. The trial court is directed (1) to order the People to give notice to Costco and Leo Hamel to comply with the notice and application requirements set forth in Financial Code section 21206.8 and Penal Code section 1407 et seq.; (2) if Costco submits and serves a written application asserting, and supporting with proof, a claim that it is the owner of the seized jewelry Rocker was convicted of stealing from Costco in this matter, to hold a noticed hearing for a determination of who is entitled to possession of the jewelry and to address the issue of restitution; and (3) to order Rocker and his counsel to appear at the hearing.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

20